# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | Case No. CR12-2024 |
| vs. | ORDER FOR PRETRIAL DETENTION |
| FRED OLIVE, | |
| Defendant. | |

On the 18th day of September, 2012, this matter came on for hearing on the Government's request to have the Defendant detained prior to trial. The Government was represented by Assistant United States Attorney Lisa C. Williams. The Defendant appeared personally and was represented by his attorney, Dennis E. McKelvie.

## I. RELEVANT FACTS AND PROCEEDINGS

On August 22, 2012, Defendant Fred Olive was charged by Indictment (docket number 15) with conspiracy to distribute heroin. At the arraignment on September 5, 2012, Defendant entered a plea of not guilty and trial was scheduled before Chief Judge Linda R. Reade on November 5, 2012.

At the hearing, Cedar Rapids Police Officer Brian Furman testified regarding the circumstances underlying the instant charges.[1] Defendant is named in a conspiracy to distribute heroin in Waterloo, Iowa. In May 2010, DEA Task Force officers were introduced to Lucious Simmons and began purchasing heroin from him. As part of the investigation of the drug conspiracy, law enforcement placed wiretaps on telephones, and identified approximately 40 people involved in the conspiracy. The conspiracy originally was a pyramid organization. Duane Appling was at the top of the pyramid, but he fled

---

[1] Furman is currently assigned to the DEA Drug Task Force in Cedar Rapids.

1

after being arrested on state charges. Once Appling fled, different individuals in the conspiracy started rotating as suppliers of heroin in Waterloo.

Officer Furman testified that Defendant was originally believed to be at the user-level (lowest) of the conspiracy, but in February 2011, Defendant stepped up and started selling heroin for Lusta Johnson, a co-conspirator. Defendant admitted making trips to Chicago to buy heroin to bring back to Waterloo for distribution. Furman stated that other co-conspirators admitted Defendant's involvement in the conspiracy, including Dominic Watts who identified Defendant as both a user and a person who "middled" drug deals for the conspiracy.

According to the pretrial services report, Defendant is 56 years old. He was born in Chicago, Illinois, but has lived in Waterloo for 35 years. Defendant's mother and two brothers also reside in Waterloo. Defendant is currently married, and has been married once in the past. He has no children from his first marriage, and one adult child from his second marriage.

Defendant was in the Army from 1973 to 1977, when he was honorably discharged. He has been a disabled veteran since his discharge in 1977, and has no employment history. He receives monthly veteran's disability benefits. Defendant suffers from arthritis, diabetes, neuropathy, and high blood pressure. He is prescribed medication for his various conditions. Defendant told the pretrial services officer that about 10 years ago, he was diagnosed with being "severe manic depressant." According to Defendant, he has participated in mental health treatment two times per week for the past 10 years. Defendant also told the pretrial services officer that he has not consumed alcohol since he was diagnosed with diabetes four years ago. He stated that he started using cocaine when he was 28 years old, and has used it off-and-on until his last use 2 years ago. Defendant also reported that he started using heroin at age 13, and when not incarcerated used it a "couple times" per week, with his last use on the day he was arrested on the instant federal charges. Since February 2012, Defendant has participated in a daily methadone treatment program for heroin addiction through the Rainbow Clinic in Waterloo.

Defendant has an extensive criminal record. Between July 1979 and June 1980, Defendant was arrested six times in Cook County, Illinois for theft (four times), aggravated assault, and robbery. Several of these arrests occurred while other charges were pending. In all of these cases, the disposition of the charge is either unknown, stricken with leave to reinstate, or the charge was dismissed. On September 9, 1980, while charges were pending, Defendant was charged and later convicted of armed robbery. Defendant was sentenced to 6 years in prison.

In 1987, in Black Hawk County, Iowa, Defendant was charged in two separate cases. He was convicted of assault and third degree theft. He was sentenced to 2 years in prison on the theft charge. He was paroled in February 1989, and discharged from parole in July 1989. In 1988, while the 1987 theft charge was pending, Defendant was charged and later convicted of second degree burglary. He was given a suspended prison sentence and 5 years probation. In 1992, his probation was modified to include up to 1 year in a residential facility. In 1993, Defendant's probation was revoked and he was sentenced to 10 years in prison. He was initially paroled in 1995, and his parole revoked twice in 1995 and 1996. He was discharged from parole in June 1997.

In 1989, while on probation, Defendant was charged and later convicted of third degree theft.[2] He received a suspended prison sentence and 2 years probation. He was discharged from probation in August 1991.

In 1992, Defendant was charged in five separate cases. He was convicted of fifth degree theft (three times), false report to law enforcement, third degree theft, and assault.[3] Defendant was sentenced to 2 years in prison on the third degree theft conviction. Defendant was on probation in all of these charges. In 1995, while on parole, Defendant was charged and later convicted of OWI, first offense. He was placed on 1 year probation. In 1997, he absconded from probation. An arrest warrant was issued and later

---

[2] According to the pretrial services report, this charge occurred on the same date that Defendant was paroled in the 1987 third degree theft charge.

[3] A second third degree theft charge was dismissed.

3

served. He probation was revoked. In 1996, while on parole and while other charges were pending, Defendant was charged and later convicted of operating a vehicle with a suspended license.

In 1998, Defendant was charged in seven separate cases. He was convicted of harassing a public employee, driving with a suspended license (twice), interference with official acts, forgery, unlawful possession of a prescription drug, and forgery (three times).[4] Most of these charges occurred while others were pending. Defendant failed to appear for court proceedings on the harassing a public employee, the first driving with a suspended license, and the first forgery charges. An arrest warrant was issued and later served in the driving with a suspended license case. Defendant was sentenced to 5 years in prison on the first forgery charge. He received suspended prison sentences on the other two forgery charges and 5 years probation on those charges. In 1999, his probation on the forgery charges was revoked.

On January 29, 1999, while on probation and while other charges were pending, Defendant was charged and later convicted of fraudulently obtaining or attempting to obtain a prescription drug (two counts) and failure to affix tax stamp (two counts). Defendant was sentenced to 15 years in prison on each count. In 2002, Defendant was charged and later convicted of three separate counts of forgery. He was sentenced to 15 years in prison on each count. He was paroled in 2008, and had his parole revoked in 2010. He was paroled to immediate discharge in 2011.

In 2008, while on parole, Defendant was charged in two separate cases. He was convicted of third degree theft and harassment of a public employee. He received a suspended prison sentence and 2 years probation in the theft charge. In 2010, his probation was revoked and he was sentenced to 2 years in prison.

---

[4] Charges for allowing an unauthorized person to drive and fifth degree theft were dismissed.

4

In 2009, while on parole and on probation, Defendant was charged in seven separate cases. Defendant was convicted of third degree theft (three times) and fifth degree theft.[5] Defendant was sentenced to 2 years in prison on all three third degree theft charges. He was paroled to immediate discharge in 2011.

On October 16, 2011, Defendant was charged in two separate cases with third degree theft, second degree theft, and forgery. On October 22, 2011, Defendant was charged in two separate cases with third degree theft. On October 26, 2011, Defendant was charged with third degree theft. On November 20, 2011, Defendant was charged with third degree theft. On March 25, 2012, Defendant was charged with third degree theft. Trial is scheduled in state court for all of these cases. On March 25, Defendant was also charged and later convicted of trespass. All of these charges occurred while other charges were pending.

## II. DISCUSSION

The release or detention of a defendant pending trial is governed by the Bail Reform Act of 1984, 18 U.S.C. § 3142. In *United States v. Salerno*, 481 U.S. 739 (1987), the United States Supreme Court upheld the constitutionality of the Bail Reform Act of 1984, while noting that "[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *Id.* at 755.

### A. Legal Standard to be Applied

If the government moves to have a defendant detained prior to trial, the court must undertake a two-step inquiry. *United States v. Friedman*, 837 F.2d 48, 49 (2d Cir. 1988). The Court must first determine by a preponderance of the evidence that the case involves an offense listed in 18 U.S.C. § 3142(f)(1), or that the defendant presents certain risk factors, as identified in § 3142(f)(2). *Id.* Once this determination has been made, the court then determines, pursuant to § 3142(e), whether any condition or combination of

---

[5] Charges for harassment of a public employee, trespass, and failure to appear for jury duty were dismissed.

conditions will reasonably assure the defendant's appearance at trial and the safety of the community. *Id.*

Regarding the first step, pretrial detention is not authorized unless the Court finds that at least one of seven enumerated circumstances is applicable. 18 U.S.C. § 3142(f). The first five enumerated circumstances refer to "offense types," such as crimes of violence, offenses punishable by life imprisonment, serious drug offenses, felonies committed by repeat offenders, and felonies involving minor victims or guns. 18 U.S.C. § 3142(f)(1)(A-E). The last two enumerated circumstances where a hearing is authorized involve "risk factors," such as a serious risk of flight, or a serious risk the defendant will obstruct justice. 18 U.S.C. § 3142(f)(2)(A-B).

Regarding the second step, if following a hearing "the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community," then the judicial officer must order the defendant detained pending the trial. 18 U.S.C. § 3142(e). A finding that no condition or combination of conditions will reasonably assure the safety of the community must be supported by clear and convincing evidence. 18 U.S.C. § 3142(f). A finding that no condition or combination of conditions will reasonably assure the defendant's appearance, however, must only be established by a preponderance of the evidence. *United States v. Orta*, 760 F.2d 887, 891 (8th Cir. 1985).

In determining whether any condition or combination of conditions will reasonably assure the defendant's appearance as required and the safety of the community, the Court must take into account the available information concerning (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant, including (a) the defendant's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings, and (b) whether, at the time of the current offense or arrest, the defendant was on

6

probation, parole, or other pretrial release; and (4) the nature and seriousness of the danger to the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g). *See also United States v. Abad*, 350 F.3d 793, 797 (8th Cir. 2003).

The Government has the burden of proof in this regard. It is aided in certain cases, however, by a rebuttable presumption found at 18 U.S.C. § 3142(e). For example, if the Court finds there is probable cause to believe that the person committed a drug offense for which a maximum term of imprisonment of ten years or more is applicable, or possessed a firearm in furtherance of a drug trafficking crime, or committed certain specified offenses involving a minor victim, then there is a rebuttable presumption that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community. 18 U.S.C. § 3142(e)(A)(B) and (E). In a "presumption case," the defendant bears a limited burden of production – not a burden of persuasion – to rebut the presumption by coming forward with evidence he does not pose a danger to the community or a risk of flight. *Abad*, 350 F.3d at 797 (citing *United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001)). Once the defendant has met his burden of production relating to these two factors, the presumption favoring detention does not disappear entirely, but remains a factor to be considered among those weighed by the court. *Id. See also United States v. Jessup*, 757 F.2d 378, 382-84 (1st Cir. 1985).

### B. Analysis

Turning to the facts in the instant action, Defendant is charged with conspiracy to distribute heroin. Accordingly, regarding the first step in the analysis, the Court finds that detention is authorized pursuant to § 3142(f)(1)(C).

Regarding the second step, there is a rebuttable presumption in favor of detention. Regarding the weight of the evidence, it is difficult for the Court in a detention hearing to weigh the evidence of an alleged conspiracy. The Court notes, however, witnesses will testify that Defendant supplied them with heroin and Defendant made trips to Chicago to obtain heroin for sale in Waterloo. Defendant also admitted to law enforcement that he made trips to Chicago for heroin and that he was involved in the conspiracy.

As a general proposition, the distribution of drugs constitutes a general danger to the community. The Court is particularly concerned with the distribution of heroin because its use often results in overdose and death. Defendant is a heroin addict, and told the pretrial services officer that he has used heroin multiple times per week for most of his adult life. Defendant also has an extensive criminal record, including multiple drug convictions. Moreover, Defendant has a history of violating pretrial release, probation, and parole. Additionally, Defendant has a history of failing to appear for court proceedings. The Court has no confidence that Defendant would comply with the terms and conditions it would impose if he were released. Therefore, based on the serious nature and circumstances of the offense, Defendant's substantial criminal record, his history of violating pretrial release, probation, and parole, his history of failing to appear for court proceedings, his active use of heroin, and the rebuttable presumption, the Court finds that Defendant should be detained pending trial.

Based on the legal standards set forth above, and considering the evidentiary factors found in 18 U.S.C. § 3142(g), the Court finds by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of the community if Defendant is released. Therefore, pursuant to 18 U.S.C. § 3142(e), the Court concludes that Defendant should be detained prior to trial. Defendant was advised in open court of his right to file a motion with the District Court for revocation or amendment of this Order.

### III. ORDER

IT IS THEREFORE ORDERED as follows:

1. The Defendant is committed to the custody of the Attorney General for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal.

2. The Defendant shall be afforded reasonable opportunity for private consultation with counsel.

3. On order of a Court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility in which the Defendant is confined shall deliver the Defendant to the United States Marshal for the purpose of an appearance in connection with a court proceeding.

4. The time from the Government's oral motion to detain (September 5, 2012) to the filing of this Ruling (September 20th, 2012) shall be excluded in computing the time within which the trial must commence pursuant to the Speedy Trial Act. 18 U.S.C. § 3161(h)(1)(D).

DATED this 20th day of September, 2012.

JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA